1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL D. MORSHED,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**COUNTY OF LAKE,** *et al.*,<br><br>      **Defendant.** | Case No.:  **13-CV-521 YGR**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  (DKT. NO. 62)** |

Plaintiff Michael Morshed brings the instant action alleging a total of seven claims arising from: (1) discrimination and hostile environment harassment based on his national origin, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. section 2000e *et seq.*; (2) national origin discrimination, harassment, and retaliation in violation of the California Fair Employment and Housing Act ("FEHA"); and (3) violation of the Civil Rights Act of 1871, 42 U.S.C. section 1981 and 1983 on account of national origin harassment.  (Complaint, Dkt. No. 1.)

Defendant County of Lake ("County") has filed a Motion for Summary Judgment (Dkt. No. 44-4) on the grounds that: (1) Plaintiff cannot establish a prima facie claim of discrimination or retaliation under Title VII or FEHA, since the acts of which he complaints were not adverse action, and all of the County's actions, including failure to promote, were based on nondiscriminatory, non-pretextual reasons; (2) Plaintiff cannot establish a claim for national origin harassment under either Title VII or FEHA; and (3) the claim under 42 U.S.C. section 1981 fails as a matter of law and

because Plaintiff cannot prove that the County had a custom, policy, and practice of unlawful discrimination, retaliation, and/or harassment.

Having carefully considered the papers submitted, the admissible evidence,[1] the parties' oral arguments, and the pleadings in this action, and for the reasons set forth below, the Court hereby **ORDERS** that the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  In summary, the Court finds that only the claims based upon the existence of a hostile work environment, due to evidence of national origin harassment, raise a triable issue of fact.

# I.   APPLICABLE STANDARD

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. 242, 250; *see also* Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, a

---

[1]  Plaintiff included objections to evidence in his responsive separate statement, contrary to Civil Local Rule 7-3.  The County has moved to strike those objections.  The County is correct that the objections were made improperly under the Local Rule.  Moreover, the vast majority are relevance objections without much consequence.  The Court does not rule on those improperly made objections, but does consider the evidence in the light most favorable to Plaintiff, as it must on summary judgment by the defendant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The County submitted objections to evidence as part of its reply brief.  (Dkt. No. 94-4.)  The Court rules as follows on those objections, for purposes of this motion only:

- Objection 2 – **SUSTAINED** for lack of personal knowledge, relevance;
- Objection 3 – **SUSTAINED** as inadmissible hearsay;
- Objection 9 – **SUSTAINED** for lack of relevance
- Objection 10 – **SUSTAINED IN PART**, to the extent offered to establish discrimination or harassment; otherwise **OVERRULED**.
- All other objections are **OVERRULED**.

United States District Court
Northern District of California

United States District Court
Northern District of California

district court may rule on summary judgment based upon facts that would be admissible in evidence at trial.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

## II.   SUMMARY OF FACTS[2]

Plaintiff is of Iranian descent, and was born in Seattle, Washington.  (UMF[3] 1.)  He began working for the County as a deputy sheriff on July 15, 1990, and was promoted to sergeant in 2002. (UMF 2, 3.)

### A.   Discriminatory Conduct/Comments Directed At Plaintiff

Plaintiff asserts that he was subjected to national origin harassment by co-workers beginning within first six months of employment and continuing throughout his employment, increasing after September 11, 2001.  Plaintiff testified that he was referred to as "camel jockey," "sand nigger," "raghead," "carpet rider," "whacky Iraqi" and "A-rab."  (AF 19.)  He testified that he was asked: "where is your red dot," "aren't you supposed to be praying to the east," and "where is your carpet?" (*Id.*)  He further testified that officers and deputies yelled, weekly or sometimes more often, "lalalalala," (imitating an Arabic ululative cry).  (*Id.*)  Plaintiff also attested that three superiors, Sergeant Chris Macedo, and Lieutenants Gary Hall and David Garzoli, made discriminatory comments based upon national origin.  According to Plaintiff, Macedo made comments about Plaintiff throwing a carpet on the ground and praying to the east, as well as sending Plaintiff an email with a link to a video called "Achmed the Dead Terrorist."  Hall told Plaintiff that the County's Canine Unit dog would "watch him in the concentration camps."  Garzoli addressed Plaintiff in an email as "you terrorist."  The County disputes Plaintiff's testimony as to these incidents of harassment, contending that all of the witnesses deposed by Plaintiff denied these incidents.

### B.   On-Duty Misconduct IA

In September of 2006, Plaintiff admitted an incident of misconduct: having sexual relations with another County employee while on duty and in uniform.  (UMF 4.)  In February 2007, at the conclusion of an Internal Affairs ("IA") investigation of the incident, Plaintiff was demoted to

---

[2] The facts stated are undisputed unless otherwise noted.

[3] References to "UMF" and "AF" are to the parties' Separate Statement of Undisputed Material Facts and Additional Facts, respectively, and the admissible evidence cited therein.

United States District Court
Northern District of California

deputy, with a condition that he could seek reinstatement to sergeant if there were "no further incidents" in the twelve-month period thereafter.  (UMF 6, 7.)  Plaintiff testified that he did not believe that his demotion was motivated by national origin discrimination.  (UMF 8.)  He also testified that the comments about his national origin significantly reduced at this time, since he was reassigned to a more remote area with different co-workers.  (UMF 92.)

### C.       Neglect of Duty IA

In December of 2007, Plaintiff was dispatched to a call for service regarding an assault with injuries, and possible gun involvement, at Middletown Middle School.  (UMF 10, 11.)  Plaintiff testified that he prepared a report for a simple battery, but did not deem it worthy of a more serious level report.[4]  (UMF 11 and Plaintiff's response thereto.)  Captain Brown learned of the incident when the parent of the victim called the Sheriff's Department to complain.  (UMF 13.)  Brown directed Plaintiff to prepare the appropriate report, and initiated an IA investigation.  (UMF 13, 14.)  The IA investigation found that Plaintiff had violated rules and regulations, and neglected his duties.  (UMF 15, 16, 17.)  At the conclusion of the IA investigation, in April 2008, Plaintiff was disciplined with 20 hours of unpaid time off and a book report.  (UMF 18.)  In May 2008, Sheriff Mitchell informed Plaintiff that he could not be reinstated to Sergeant at that time, as a consequence.  (UMF 19.)

### D.       Denial of Promotion to Sergeant

In February of 2008, Plaintiff received "below standard" marks on his annual performance evaluation in the "field endorsement/service delivery" category.  (UMF 21, 22.)  The poor marks were based upon low numbers of arrests, citations, service of warrants as compared to his colleagues.  (UMF 23-26.)  Plaintiff contends that he was advised that he was not eligible to take the promotional exam because of this "below standard" mark.  (UMF 29 and AF 1.)  Sometime around March 2009,

---

[4] There is some disparity in the record about whether Plaintiff initially prepared any report at all.  Taking the evidence in the light most favorable to Plaintiff, the Court credits Plaintiff's testimony that he prepared a "602 Welfare and Institutions/242 Report" of the incident.

United States District Court
Northern District of California

Plaintiff took the sergeant exam, scoring an 86, the lowest out of the nine participants.[5] (UMF 30, 31.) Again, Plaintiff was not promoted.[6] (UMF 32.)

    **E.    EEOC Complaint and Subsequent Events**

    Around May 2009, then-sheriff candidate Frank Rivero filed an EEOC complaint and began talking about issues of harassment and discrimination at the Sheriff's Department. Plaintiff testified that comments related to his national origin "practically ceased" after Rivero filed his charge. On June 1, and apparently in response to Rivero's complaint, Plaintiff was interviewed by an investigator for the Office of County Counsel regarding treatment of minority employees within the Sheriff's Department.

    On June 4, 2009, Plaintiff filed his own EEOC complaint against the County, alleging national origin discrimination and charging that he had been subjected to slurs based on his national origin from 1990 throughout the duration of his employment, and that he was not promoted because of his national origin. Plaintiff claims that, subsequent to the filing of his complaint, he was subjected to write-ups and counseling as well as denial of overtime requests by Sergeants Macedo and Brian Martin. Sheriff Mitchell, upon learning of Plaintiff's EEOC Complaint, told Sergeant Martin that he regretted not accepting Plaintiff's offer to resign when the allegations of on-duty misconduct came forward.

    Later in June 2009, the County discovered a number of e-mails on the printer at the office that included comments about Plaintiff's national origin. Captain Brown commenced an investigation, locking Plaintiff out of his email account. On July 28, 2009, Brown commenced a meeting with Plaintiff in which he went over each email and questioned Plaintiff about whether he was offended by the emails or wanted to make a complaint. Those emails included the references "you terrorist," a video called "Achmed the Dead Terrorist," and a link to a news article about a camel beauty contest. In that meeting, Plaintiff stated he was not offended and did not want to

---

[5] Plaintiff's testimony was unclear on the exact date or dates he took a subsequent sergeant's exam. The County submitted evidence indicating that he submitted an exam in 2008 as well as 2009.

[6] Plaintiff argued that he was told by another employee that the deputy who was promoted to Sheriff in March 2009, Brian Kenner, was permitted to take the promotional exam despite having a below standard rating on his evaluation. However, Plaintiff submitted no admissible evidence on this point.

complain.  Plaintiff testifies that the conversation with Brown was recorded, and that Brown repeated each email to him in a hostile manner, asking after each one whether Plaintiff wanted to file a complaint or was offended.   Plaintiff was issued a "counseling statement" after the interview.

Plaintiff recounts a number of incidents occurring thereafter:

- July 28, 2009, Plaintiff complained to Captain Howe that he had been denied overtime in violation of department policy by Sergeant Macedo.  That denial was reversed after Plaintiff complained.  A week later, Plaintiff was written up for failing to complete a Court Security log from a month prior.

- August 17, 2009, Plaintiff was issued a counseling memo regarding time card and overtime corrections by Sergeant Brian Martin

- August 31, 2009, EEOC received the response of the Sheriff's Department to Plaintiff's EEOC complaint, expressing "disappointment" with Plaintiff, given the Sheriff's efforts to retain him as an employee and "give him every opportunity to resume his prior position as sergeant."  (AF 4.)

- November 5, 2009, Plaintiff complained to Captain Howe that scheduled overtime he had been granted was withdrawn at the last minute and given to another senior deputy by Sergeant Macedo.  Again, the matter was ultimately resolved with a determination that Plaintiff was entitled to the overtime.

- November 25, 2009, Sergeant Gregore sent memo to Captain Brown saying that Plaintiff was at home when he was supposed to be working scheduled overtime.  This prompted Captain Brown to order an IA investigation ("Time Spent At Home IA").

(See AF 4, 7, 8, 9, 10, 11, and responses thereto.)

In early February 2010, Sergeant Brian Martin noticed a copy of a draft crime report concerning a former Sheriff's Department officer had been posted to an internet weblog.  (UMF 34.) Martin reported the same to Captain Brown, who initiated an investigation.  (UMF 35, 37.)  Based on the circumstances and the persons with access to the Sheriff's database at the time the draft was generated, likely suspects were Sheriff's Department employees.  (UMF 36, 39.)  A computer records audit indicated that Plaintiff was one of a handful of people who had accessed the document, and that he accessed it twice during the relevant time period, while a thumb drive was inserted in a system computer.  (UMF 40-43.)  Sergeant Martin then sought a search warrant to search Morshed's home.  (UMF 48.)  He included in the application his conclusions that Morshed might have a motive to post the information to the internet, including his demotion, had filed an EEOC complaint, and

potentially was a disgruntled employee who might want to retaliate against the Sheriff's Department. Martin also noted that Sheriff Mitchell was up for reelection that year and that Plaintiff was a supporter of his challenger, Rivero.  (UMF 49, 50.)  A Lake County Superior Court judge found probable cause and issued a search warrant, which Sergeant Martin executed.  (UMF 52.)

On February 10, 2010, Plaintiff was placed on administrative leave pending the criminal investigation.  (UMF 53.)  That same day, Martin executed on the search warrant at Plaintiff's home, finding a thumb drive with the same serial number as the device that was inserted into the computer that Plaintiff was sitting at the time that the draft report was removed from the Department's computer system. (UMF 57.)

As part of the IA investigation into the stolen computer files, on March 4, 2010, Plaintiff appeared as ordered, with his counsel, for interviews.  (UMF 60.)  Plaintiff was provided with his *Lybarger*[7] admonitions and *Miranda* warnings and informed that any refusal to cooperate could be considered insubordination and subject to further discipline.  (UMF 61.)  Brown specifically advised Plaintiff that failure to cooperate in the administrative internal affairs investigation would constitute give rise to a separate charge of insubordination.  (*Id.*)  Plaintiff refused to answer any questions during the interviews.  (UMF 62, 63.)  Plaintiff's refusal to answer was deemed insubordination, of which he was duly noticed on March 4.  (UMF 65.)  On March 19, 2010, he was terminated for insubordination.  (UMF 68.)  As Plaintiff concedes, it was the insubordination charge, and not the stolen computer files charge, that resulted in his termination.  (UMF 70.)

On June 6, 2010, an editorial piece written by Sheriff Mitchell appeared in the in the Lake County News, wherein he referred to Rivero as a "professional victim," and someone whose "closest allies are former law enforcement officers who proved to be professional victims too."  (AF 6.)

_____

[7]  In *Lybarger v. City of Los Angeles,* 40 Cal.3d 822 (1985), the California Supreme Court held that a police officer must be told "that although he had the right to remain silent and not incriminate himself, (1) his silence could be deemed insubordination, leading to administrative discipline, and (2) any statement made under the compulsion of the threat of such discipline could not be used against him in any subsequent criminal proceeding." *Id.* at 829.  Under *Lybarger,* the officer has "neither a constitutional nor a statutory right to remain silent free of administrative sanction…a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer… [and Cal. Gov't Code] Section 3303, subdivision (e), expressly provides that an officer who refuses to respond to questions or submit to interrogation is subject to punitive action by his employer." *Id.* at 827-828.

United States District Court
Northern District of California

On March 21, 2012, the EEOC sent Plaintiff a determination letter concerning the charge of national origin discrimination and harassment with the findings of its investigation, finding evidence to support some but not all of Plaintiff's claims.  (AF 20.)

**III.   DISCUSSION**

**A.      Harassment On the Basis of National Origin**

Plaintiff brings separate claims for harassment on the basis of national origin under FEHA and Title VII.  Under FEHA, harassment on the basis of national origin is considered a form of employment discrimination.  Section 12940(h)(1) states that it is unlawful "[f]or an employer… or other any other person, because of…national origin… to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."  California Code of Regulations, Title 2, section 7287.6, subdivision (b)(1)(A) defines harassment to include "[v]erbal harassment, *e.g.* epithets, derogatory comments or slurs on a basis enumerated" in FEHA.  Likewise, verbal harassment may constitute employment discrimination under Title VII.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (citing, with approval, the "substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult" based on race and national origin); *see also Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 129 ("Verbal harassment in the workplace also may constitute employment discrimination under [T]itle VII").  "Explaining the potentially debilitating effects of this form of employment discrimination, the United States Supreme Court has observed: 'A discriminatorily abusive work environment... can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.'"  *Aguilar,* 21 Cal.4th at 130, quoting *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 22 (1993).

FEHA and Title VII conduct the same analysis regarding harassment claims.  *See Hughes v. Pair,* 46 Cal.4th 1035, 1042-43 (2009); *Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003).  To establish a hostile work environment harassment claim based on national origin,

United States District Court
Northern District of California

Plaintiff must establish three *prima facie* elements: "(1) he was subjected to verbal or physical conduct [because of his national origin]; (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment." *Vasquez,* 349 F.3d at 642; *see also Lyle v. Warner Brothers Television Productions,* 38 Cal.4th 265, 279 (2006).  Under California and federal law, the existence of a hostile work environment depends upon the totality of the circumstances.  As the Ninth Circuit stated in *Vasquez,*

> To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  In addition, the working environment must both subjectively and objectively be perceived as abusive.

*Vasquez,* 349 F.3d at 642 (internal quotations and citations omitted); *see also Rehmani v. Sup.Ct. (Ericsson, Inc.)* 204 Cal.App.4th 945, 953–959 (2012) (granting writ of mandate to reverse a grant of summary judgment where triable issues as to national origin hostile work environment claim by Pakistani Muslim employee were established based upon evidence of Indian corkers making jokes regarding plaintiff blowing things up and planning terrorist attacks, that Pakistan should be bombed and wiped out, and that plaintiff's birthday was September 11); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1074 (9th Cir. 2005) (district court properly denied summary judgment where evidence showed that CEO persisted in altering plaintiff's Arabic name in favor of a non-Arabic name, first by altering the name Mamdouh to "Manny" and then by changing Hakem to "Hank," in weekly meetings and in emails for almost a year, despite plaintiff's request that he not do so).

Under FEHA, an employer may be held liable for coworker harassment only where the employer "knows or should have known of this conduct and fails to take corrective action."  Cal. Govt. Code § 12940(j)(1).  However, "[b]ecause the employer cloaks the supervisor with authority, we ordinarily attribute the supervisor's conduct directly to the employer" for purposes of harassment liability.  *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 36 (2003), *quoting Brooks v. City of San Mateo,* 229 F.3d 917, 927 n. 9 (9th Cir. 2000).  Under certain circumstances, even a single racial

9

United States District Court
Northern District of California

1    slur by a supervisor – a person in a position of authority in the workplace – may be found to create a

2    hostile work environment.  *Id.*

3          Here, the County argues that the ethnic slurs allegedly made regarding Plaintiff's Iranian

4    descent were made only by coworkers, and that Plaintiff never made a complaint about the

5    comments.  The County also argues that liability cannot be shown merely on the basis that a

6    supervisor *witnessed* the discriminatory comments.  The County's argument fails both on the facts

7    and the law.  The County cites the Supreme Court's decision in *Clark County School District v.*

8    *Breeden*, 532 U.S. 268, 271 (2001).  In *Clark County*, the Supreme Court held that a supervisor's

9    comment, coupled with a co-worker's response during the same meeting, did not rise to the level of

10   being "extremely serious" but was, at worst, and isolated incident that could not meet Title VII's

11   "severe or pervasive" standard for sexual harassment.  *Clark County*, 532 U.S. at 271 (not

12   sufficiently severe or pervasive to constitute sexual harassment).  The holding in *Clark County* does

13   not permit a credible argument that an employer can avoid liability for harassment if a supervisor

14   "only witnessed" repeated use of ethnic slurs, like those to which Plaintiff testifies here.[8]  Moreover,

15   Plaintiff has put forward evidence that employees in supervisory positions, including Sergeant

16   Macedo and Sergeant McMahon, participated in the ethnic slurs as well as witnessing them and

17   laughing along with the group making them.  (Response to UMF 75, 76, 79, 96; AF 12, 19.)[9]

18         The County also argues that Plaintiff has not offered evidence that the alleged comments

19   affected his work environment.  However, even if Plaintiff never lost pay, benefits, or other

20   opportunities as a result of the repeated ethnic slurs by his supervisors and co-workers, the County

21   could still be liable for discrimination as a result of the hostile work environment.  As the Supreme

22   Court has recognized, it is the severe or pervasive harassment *itself* that alters the conditions of

23
24         [8]  The County's citation to *Williamson v. Adventist Health Sys./Sunbelt, Inc.*, 372 F. App'x
25   936, 940 (11th Cir. 2010) is also unavailing.  Even if the case were citable authority, which it is not
     under Fed. Rule of Appellate Procedure 32.1, the case is inapposite.  The case was focused on
26   whether an isolated comment by a supervisor, removed in time from the termination, was sufficient
     to evidence of pretext in a wrongful termination case, rather than any claim of hostile work
     environment harassment.

27
28         [9]  To the extent the County is attempting to argue that the supervisors here were not in a
     position to exercise authority over Plaintiff, the evidence belies that argument.  (*See* AF 7, 8
     [Sergeant Macedo issued disciplinary letter to Plaintiff, denied overtime requests made by Plaintiff]).

United States District Court
Northern District of California

1   employment.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  "[T]he language of Title

2   VII is not limited to 'economic' or 'tangible' discrimination... [t]he phrase 'terms, conditions, or

3   privileges of employment' evinces a congressional intent ''to strike at the entire spectrum of

4   disparate treatment of men and women' in employment."  *Id*.

5        The evidence of Plaintiff's subjective feeling that his work environment was abusive or

6   hostile is somewhat equivocal, but nevertheless could support of finding that he subjectively felt it

7   was abusive.  Though Plaintiff did not complain about the conduct, he offers evidence that

8   supervisors witnessed and participated in the conduct, so that he believed that the conduct was just

9   accepted in the Sheriff's Department and he should not say anything if he wanted to keep his job.

10  (UMF 96 and Plaintiff's response thereto.)  The County argues that, because Plaintiff denied being

11  offended by the comments found in several emails when confronted by Captain Brown in June 2009,

12  this shows Plaintiff was not offended by any claimed conduct.  Plaintiff's denial that he was

13  offended, given the context, does not aid the County.  As Plaintiff testified, he perceived the

14  questioning by Captain Brown as done in an extremely hostile manner.  (AF 12, Morshed Dec. ¶5.)

15  The circumstances of the questioning – that it was recorded by the Captain, that it was done in the

16  context of an investigation that included emails that Plaintiff had sent, and that it resulted in a

17  disciplinary counseling letter being placed in Plaintiff's file thereafter – could give rise to a

18  reasonable inference that Plaintiff did not feel he could speak freely about the ethnic slurs directed at

19  him.  Moreover, Plaintiff had just given a statement on June 1, 2009, to the independent investigator,

20  about two weeks before Captain Brown's questioning.  Plaintiff's statement to the investigator,

21  consistent with his other statements, was that that he had witnessed and experienced minorities being

22  the brunt of jokes based on ethnicity, that it was part of the culture in the Sheriff's Department, and it

23  bothered him some but he did not say anything about it.  (Response to UMF 95, Morshed Dec. Exh.

24  H at 1-2.)

25        Further, there is both an objective and subjective element to the question of whether alleged

26  harassing conduct is sufficiently severe or pervasive enough to rise to the level of a hostile work

27  environment.  *See Vasquez*, 349 F.3d at 642; *see also Rehmani v. Superior Court*, 204 Cal. App. 4th

28  945, 951-52 (2012) ("'Common sense, and an appropriate sensibility to social context, will enable

United States District Court
Northern District of California

courts and juries to distinguish between simple teasing or roughhousing ... and conduct [that] a reasonable person in the plaintiff's position would find severely hostile or abusive,'" quoting *Miller v. Dept. of Corrections,* 36 Cal.4th 446, 462 (2005) and *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81–82 (1998)).  The decision whether conduct crosses that line is one that is highly factual.  From an objective, reasonable person standpoint, the comments, emails and conduct directed at Plaintiff, deriding him based on his national origin, could certainly give rise to a finding of a hostile work environment.  Thus, based on the evidence put forward by Plaintiff, there are disputed issues of material fact.  The Court cannot say, as a matter of law, that the conduct described by Plaintiff is not sufficiently severe and pervasive, both objectively and subjectively, to constitute a hostile work environment.  Summary judgment on this claim is, therefore, **DENIED**.

**B.      National Origin Discrimination**

**1.      McDonnell-Douglas** *Burden Shifting*

Plaintiff has also alleged that he suffered national origin discrimination when he was not reinstated as a sergeant after his disciplinary demotion.  He claims that he was not allowed to seek a promotion in 2008 on account of a low mark on his performance evaluation while another deputy, who is Caucasian/White, with a similarly low mark was permitted to participate in a promotional exam for a sergeant position.  Plaintiff contends that this denial of a promotional opportunity, along with the history of national origin harassment by co-workers and supervisors, demonstrates that he was subjected to national origin discrimination.

Discrimination claims based upon indirect or circumstantial evidence are analyzed under an allocation of burdens of production and proof, based on the model set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell-Douglas* framework, the burden of production first falls on the plaintiff to make out a *prima facie* case of discrimination.  The plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position he held (or for the position to which he wished to be promoted and for which he applied); (3) he was terminated or demoted from (or denied a promotion to) that position; and (4) the job went to someone outside the protected class.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502,506 (1993); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 (9th Cir. 2004).  If the

United States District Court
Northern District of California

1    plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the

2    employer, who must present evidence sufficient to permit the factfinder to conclude that the

3    employer had a legitimate, nondiscriminatory reason for the adverse employment action.  *St.*

4    *Mary's Honor Center*, 509 U.S. at 506-07.  If the employer does so, the plaintiff must

5    demonstrate that the employer's articulated reason is a pretext for unlawful discrimination by

6    either directly persuading the court that a discriminatory reason more likely motivated the

7    employer, or indirectly by showing that the employer's proffered reason is unworthy of credence.

8    *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also Aragon v.*

9    *Republic Silver State Disposal. Inc.,* 292 F.3d 654, 658-59 (9th Cir. 2002) (en banc).

10          Because of the similarity between state and federal employment discrimination laws,

11   California discrimination claims under the Fair Employment and Housing Act (FEHA) (Cal. Govt.

12   Code § 12940 et seq.) are evaluated identically to claims asserted under Title VII (42 U.S.C. §

13   2000e).  *See Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 354 (2000).  Like Title VII case law,

14   California has adopted this burden-shifting approach.  *Id.*

15          **2.      *Analysis***

16          Here, Plaintiff has failed to offer evidence to create a triable issue on the *prima facie*

17   elements of his discrimination in promotion claim.  While Plaintiff contends that he was denied the

18   opportunity to take the promotional exam in 2008 on account of his national origin, he does not put

19   forward admissible evidence to establish this element.  First, Plaintiff has not established that he was

20   qualified for a promotion to sergeant in 2008.  Defendant has submitted evidence showing that

21   Plaintiff had been subjected to a disciplinary demotion of one-year, conditioned upon no further

22   misconduct.  (UMF 7.)  Plaintiff failed to meet that condition due to his second disciplinary issue for

23   Neglect of Duty in connection with the middle school incident.  (UMF 19 and Plaintiff's response

24   thereto.)  He was informed at that time that he would not be eligible for promotion due to that

25   misconduct.  *Id.*  And, aside from this second incident of misconduct, he received below standard

26   scores on his performance evaluation.  (UMF 21-29.)  Plaintiff offers no evidence to counter this

27   showing by Defendant or create a triable issue on his eligibility for promotion in 2008.  It is

28

1    undisputed Plaintiff was deemed eligible to promote in 2009, and that he tested and interviewed, but

2    was not promoted.  (UMF 30, 31, 32.)

3          Second, Plaintiff does not offer admissible evidence that others similarly situated were

4    treated more favorably in terms of promotion to sergeant.  Plaintiff proffers only his own testimony

5    that he heard from someone else that the person promoted to sergeant in March of 2009 had a poor

6    rating on an evaluation, but was still allowed to take the promotional exam.  Thus, the only evidence

7    Plaintiff offers to establish that others were treated differently is inadmissible hearsay and

8    speculation.  The Court notes that, although a motion to compel further responses to discovery was

9    pending at the time of the summary judgment hearing in this matter, and has since been decided

10   partially in favor of Plaintiff (Dkt. No. 102), Plaintiff never made any request under Rule 56(d) for a

11   continuance of the hearing to permit him to present other evidence on this point.  By offering nothing

12   more than this single piece of inadmissible hearsay, Plaintiff has not established a triable issue.  *See*

13   *Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382 (7th Cir. 2010) (in an unlawful discrimination case,

14   plaintiff's uncorroborated self-serving testimony about a factual matter involving other employees'

15   qualifications cannot create a triable issue of fact as to whether co-employees were similarly situated

16   to plaintiff without establishing a foundation for personal knowledge of the co-employees'

17   qualifications); *Vasquez v. County of Los Angeles,* 349 F.3d 634, 640 (9th Cir. 2003) (plaintiff did

18   not establish prima facie case in the absence of evidence that he was treated differently on account of

19   his national origin).

20         Because Plaintiff has not offered admissible evidence from which a reasonable jury could

21   find either that he was qualified to seek the promotion to sergeant in 2008, or that some other person

22   outside his protected class was allowed to be promoted to sergeant despite a similar disqualification,

23   Plaintiff has failed to establish his prima facie case as a matter of law.  *See  St. Mary's Honor  Center*

24   *v. Hicks,* 509 U.S. 502, 506 (1993); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 (9th

25   Cir. 2004).  Thus, the County's motion for summary judgment on the Title VII and FEHA claims

26   for failure to promote must be **GRANTED**.

27         **C.     Retaliation**

28

United States District Court
Northern District of California

1   To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a

2   protected activity, (2) an adverse employment action[,] and (3) a causal link between the two."

3   *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  Once established, the burden shifts

4   to the employer to present legitimate reasons for the adverse employment action.  *Id.*  If the employer

5   does so, the burden shifts back to plaintiff to demonstrate a genuine issue of material fact as to

6   whether the reason advanced by the employer was a pretext. *Id.*  A FEHA retaliation claim requires

7   this same burden shifting analysis.  *Id., citing Flait v. North Am. Watch Corp.,* 3 Cal.App.4th 467,

8   476 (1992).  Pretext may be inferred from the timing of the discharge decision, the identity of the

9   decision maker, or by the discharged employee's job performance before termination.  *Hanson v.*

10   *Lucky Stores, Inc.,* 74 Cal.App.4th 215, 224 (1999).

11   Plaintiff claims that he was subjected to a number of retaliatory acts after speaking with the

12   County's investigator and submitting an EEOC charge.  He contends that the County's retaliation

13   took the form of denial of overtime, scrutiny of his time cards, unwarranted internal affairs and

14   criminal investigations and, ultimately, his termination.  He also cites as evidence of retaliatory

15   animus: (1) the Sheriff's response of "disappointment" to his complaint in the official EEOC

16   response; (2) the Sheriff's referral to Rivero and his "closest allies" as "professional victims," in

17   apparent reference to filing EEOC complaints; (3) hostile questioning by Captain Brown in

18   connection with the investigation of emails sent by Macedo to Plaintiff; and (4) mention of the

19   EEOC complaint as part of the basis for seeking a search warrant of Plaintiff's home in connection

20   with the Stolen Property IA.

21   On the one hand, most of the conduct Plaintiff cites does not amount to an adverse

22   employment action on its own.  As Plaintiff concedes, the overtime shifts he was initially denied

23   were granted once he pointed out the error.  (*See* AF 8 and response thereto).  He cites to no adverse

24   consequences of the scrutiny of his time cards.  (*See* AF 9 and response thereto.)  The fact that he

25   was subject to internal affairs and criminal investigations, standing alone, is not an adverse

26   employment action. *McInnis v. Town of Weston*, 375 F. Supp. 2d 70, 84-85 (D. Conn. 2005).

27   On the other hand, termination is the quintessential adverse employment action.  *See* Cal.

28   Gov't Code section 12940(h) (unlawful to "*discharge*, expel, or otherwise discriminate against any

person because the person has opposed any practices forbidden under" FEHA) (emphasis supplied); *see also Sada v. Robert F. Kennedy Medical Center,* 56 Cal.App.4th 138, 161 (1997).  However, Plaintiff has failed to offer evidence from which a reasonable jury could infer that his termination was on account of retaliation for his protected complaints.  In particular, the causal chain is broken by the fact that Plaintiff refused to cooperate in the criminal investigation of the stolen computer files, despite a *Lybarger* admonition warning him that failure to cooperate would be considered insubordination and grounds for termination.  (UMF 61-63.)  Plaintiff's argument that the IA investigations were just a pretext for finding some reason to discipline him simply is not supported by the evidence, given that the ultimate reason for his termination was refusal to cooperate in the criminal investigation regarding the stolen computer files.[10]  Hence, summary judgment on these grounds is appropriately **GRANTED**.

### D.  Section 1981/1983 Claim

The County argues that it is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. section 1981 because Plaintiff has not offered evidence of a "policy or custom," which he must in order to state a claim against a public entity.[11]  The Court agrees that a claim for violation of section 1981, while permitting a direct cause of action against a public entity, still requires a showing that Plaintiff's rights were violated as a result of the County's "policy or custom," similar to a claim under section 1983.  *See Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204,

---

[10]  The undisputed facts also indicate that the reason Plaintiff was investigated in connection with the Stolen Property IA was because a general audit on the computer system determined that he accessed a particular version of the report as it existed in a certain time frame, and, at the time he accessed the report, a removable "thumb drive" was inserted into the computer from which he accessed it.  (UMF 41-45.)

[11]  The County also raised an argument in its moving papers, essentially abandoned on reply, that Plaintiff cannot bring a claim for discrimination based on national origin under section 1981, only discrimination based upon "race."  Such an argument is foreclosed by the Supreme Court's holding in *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028, 95 L. Ed. 2d 582 (1987) ("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."); *see also El-Hakem, supra,* 415 F.3d 1068, 1073 (9th Cir. 2005) (hostile work environment claim based upon plaintiff's Arabic ancestry).

United States District Court
Northern District of California

1215 (9th Cir. 1996) (finding implied right of action under 1991 Civil Rights Act amendments to 42 U.S.C. §1981, and similar "policy or custom" requirement as under section 1983, based on similar language), *accord Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1070 (9th Cir. 2007) (following *Federation*).  "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).  "Both require proof of discriminatory treatment and the same set of facts can give rise to both claims."  *Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.1985).

With respect to the discrimination in promotion and the retaliation claims, summary judgment is appropriate for the same reasons as stated above.  With respect to the hostile work environment discrimination claim, likewise, the evidence shows that there are triable issues of fact as to whether the conduct was sufficiently severe and pervasive, and whether the County's supervisors participated in the conduct such that a "policy or custom" can be established.[12]  Thus, summary judgment as to Plaintiff's claim under section 1981 is **GRANTED IN PART** to the extent it is based upon discrimination in promotion and retaliation, and **DENIED IN PART** to the extent it is based upon Plaintiff's hostile work environment theory.

**IV.    CONCLUSION**

Accordingly, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

Summary judgment is **GRANTED** in favor of the County as to Plaintiff's First Cause of Action for Discrimination on the Basis of National Origin under Title VII for denial of a promotional opportunity; Third Cause of Action for Retaliation under Title VII; Fourth Cause of Action for Discrimination on the Basis of National Origin under FEHA; Sixth Cause of Action for Retaliation

---

[12]  The Court notes that, while the County has argued Plaintiff cannot establish a policy or custom, the County did not specifically identify the facts it believes negate this element.  (*See* Defendant's Separate Statement of Material Facts, Dkt. No. 44-6 [no facts identified specifically related to section 1981 claim].)  The only facts offered by the County apparently related to this issue are: (1) the existence of County policies against discrimination and harassment; and (2) the County's contentions that no supervisors participated in the ethnic slurs.  As stated above, Plaintiff has submitted evidence to create a dispute on the question of supervisor participation in the alleged harassment.

under FEHA; and Seventh Cause of Action for Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981 to the extent based upon denial of a promotional opportunity and retaliation.

Summary judgment is **DENIED** as to Plaintiff's Second Cause of Action for Hostile Environment National Origin Harassment under Title VII; Fifth Cause of Action for Hostile Environment National Origin Harassment under FEHA; and Seventh Cause of Action for Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981 to the extent based upon hostile work environment.

This terminates Docket No. 62.

**IT IS SO ORDERED.**

Dated: May 1, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

18